

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| JUDY GAUTHIER, as an individual and on behalf of Larry Gauthier and his estate, *et al.*, §§§§ Plaintiffs, § § v. § § UNION PACIFIC RAILROAD CO., *et al.*, § § Defendants. | CIVIL ACTION NO. 1:07-CV-12 (TH/KFG) |

### MEMORANDUM OPINION IN SUPPORT OF
### ORDER ON DEFENDANT'S MOTION TO QUASH
### AND FOR PROTECTIVE ORDER

Pursuant to 28 U.S.C. § 636(b)(1)(A) and the Local Rules for the United States District Court, Eastern District of Texas, Appendix B, the District Court referred this matter to the undersigned United States Magistrate for consideration of and recommended disposition on pretrial matters and proceedings, including determination of non-dispositive discovery dispute. The Court previously issued its short order granting Defendant Union Pacific's *Motion to Quash and Motion for Protective Order* [Clerk's doc. #s 64, 65]. *See Order* [Clerk's doc. #75]. The Court now files this memorandum opinion setting forth the legal reasoning and analysis in support of that order granting the motion to quash.

Background

The Plaintiffs filed this civil action based upon events occurring on or about December 29, 2006, when an Amtrak train traveling on a Union Pacific track struck Larry Gauthier's vehicle at the "Eddy Street Crossing" in Vinton, Louisiana. The impact of the train killed Larry Gauthier. The Plaintiffs are all family members of Mr. Gauthier and filed their claims sounding in allegations of wrongful death, negligence and gross negligence either individually or on behalf of Mr. Gauthier's estate. The Plaintiffs filed suit against Defendant Union Pacific and the other Defendants, Andrew Granger, Brent Waguespack, Ken Rouse, Jack Mann, all alleged to be employees of Union Pacific in the *First Amended Complaint*, and National Railroad Passenger Corporation, doing business as Amtrak.

The Plaintiffs allege that the crossing had previously been closed and reopened and that, upon reopening, the crossing had no or very little warning to vehicle traffic. The Plaintiffs further contend that the Defendants had a duty to make the crossing safe or close it, but they failed to close it or provide adequate warning at the crossing. Throughout the case, Plaintiffs have argued that there has been a history of accidents and problems at the Eddy Street Crossing.

Defendant's Motion and Responsive Briefs

According to Defendant Union Pacific's *Motion to Quash and for Protective Order*, filed May 21, 2008, the Plaintiffs noticed the depositions of John Michael Hemmer, James R. Young, Richard K. Davidson, and Dennis J. Duffy for June 17, 18, 19 and 23, 2008, respectively. These deponents are current or former executive officers of Union Pacific. Mr. Hemmer is an attorney, Senior Vice President of Law and General Counsel. Mr. Davidson was formerly chairman and CEO of Union Pacific and is now retired. Mr. Young is currently Chairman, President and Chief

Executive Officer (CEO) of Union Pacific. Mr. Duffy is Executive Vice President of Operations.

The Defendant requests that the deposition notices for these individuals be quashed and that the Court enter an accompanying protective order, requiring the Plaintiffs to seek less burdensome and more convenient means of discovery. In support, the Defendant argues that under the application of the "apex doctrine," the deponents should not be subjected to the depositions sought by Plaintiffs because they do not have unique or superior knowledge of relevant discoverable information and the Plaintiffs must accordingly pursue less intrusive means of discovery before attempting to secure their testimony via deposition. *See Motion to Quash*. The Defendants also attached affidavits from the four deponents stating that they do not have first-hand personal knowledge of the accident at issue in this lawsuit. *See Affidavits of Hemmer, Young, Davidson and Duffy, attached as Exhibits to Motions to Quash*. The Defendant further argues that any information that Mr. Hemmer received would be privileged as he acts as General Counsel and Senior Vice President of Law.

The Plaintiffs responded in opposition to the motion to quash, arguing first that federal courts do not recognize the apex doctrine; depositions of high-level executives are routinely allowed when their conduct and knowledge are relevant to the case; there are no extraordinary circumstances prohibiting deposing the executives at issue in the motion to quash, and, even if the state law apex doctrine applied, the Plaintiffs have met that standard because they have already secured testimony from numerous lower-level Union Pacific officials. *See Plaintiffs' Response* [Clerk's doc. #69]. In support, the Plaintiffs offer evidence that counsel obtained in another Eddy Street Crossing case (the *Cezar* case) relative to Union Pacific's alleged policies regarding railroad crossing safety. The Plaintiffs obtained numerous depositions from lower-level executives in that case, and they argue

3

that the information demonstrates that they need the depositions at issue here to "get a true understanding of Union Pacific's policies and procedures relating to safety upgrades at railroad crossings." *See Plaintiffs' Response*. The Plaintiffs then offer arguments about each proposed deponent's relevant knowledge, contending that it is necessary to depose them "to get to the bottom of this important public safety issue," specifically Union Pacific's policies for upgrading crossings. *Id.* The Plaintiffs argue that they need this information to carry their burden in the case.

Defendant then filed its reply to the Plaintiffs' response, wherein Defendant again argues the "apex" deposition standard precludes the depositions of the individuals at issue in the motion to quash. *See Defendants' Reply Brief* [Clerk's doc. #71], filed June 9, 2008. Defendant then takes issue with the information provided from the *Cezar* case, citing that it is on appeal and pointing out that minimal discovery has been conducted in this case. Defendant alternately argues that the depositions are premature because the Defendants have presented a federal preemption argument to the Court in a pending motion for summary judgment.

Discussion

In federal practice, pretrial discovery is a "broad regime." *Blackboard Inc. v. Desire2Learn, Inc.*, No. 9:06-CV-155, 2007 U.S. Dist. LEXIS 84181 at *4 (E.D. Tex. Nov. 14, 2007) (citing *O2 Micro Int'l v. Monolithic Power, Sys.*, 467 F.3d 1355, 1366 (5th Cir. 2006)). Pursuant to Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery of any nonprivileged matter "relevant to any party's claim or defense." The definition of relevant information in Rule 26(b)(1) is broad, and relevant information need not be admissible at the trial of the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. *Ferko v. Nat'l Ass'n for Stock Car Auto*

*Racing, Inc.*, 218 F.R.D. 125, 132 (E.D. Tex. 2003) (citing Fed. R. Civ. P. 26(b)(1)). The phrase "relevant to any party's claim or defense" is also defined expansively in Local Rule CV-26(d).[1]

As the party seeking discovery, the Plaintiffs must establish the threshold burden of relevancy under the Rules. *See Spiegelberg Mfg. Inc. v. Hancock*, No. 3-07-CV-1314-G, 2007 U.S. Dist. LEXIS 88987 (N.D. Tex. Dec. 3, 2007) (citations omitted). Once the Plaintiffs establish that the discovery requests are within the scope of permissible discovery, the burden shifts to the Defendant to show why discovery should not be permitted. *Id.*

Federal Rule of Civil Procedure 26(c) authorizes the court, for good cause shown, to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c). A party seeking a protective order to prevent a deposition must show good cause and the specific need for protection. *Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002) (citations omitted); *see also Ferko*, at 133 (citing *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (the burden is upon the movant to prove the necessity of a protective order, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements)). The court must balance the competing interests of allowing discovery and protecting the parties and deponents from undue burdens. *Williams ex rel. Williams*, at 579. In deciding whether to grant a motion for a protective order, the court has significant discretion. *Ferko*, at 133 (citing *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir.

---

[1] Local Rule CV-26(d) provides the following guidance as to whether something is "relevant to an party's claim or defense": "(1) It includes information that would not support the disclosing parties' contentions; (2) It includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties; (3) It is information that is likely to have an influence on or affect the outcome of a claim or defense; (4) It is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and (5) It is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense." E.D. Tex. R. CV-26(d).

1985)). Federal courts have, in fact, permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case. *In re Bridgestone/Firestone, Inc., Tires Products Liability Litig.*, 205 F.R.D 535, 536 (S.D. Ind. 2002) (citing *Six West Retail Acquisition v. Sony Theatre Mgmt.*, 203 F.R.D. 98 (S.D.N.Y. 2001); *Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140 (D. Mass. 1987)).

Based upon Rule 26, the definition of "relevancy" under this Court's Local Rules, and the above-cited caselaw, the Court concludes that the information sought by Plaintiffs through the noticed depositions is relevant to their claims. In their response, the Plaintiffs outline their specific reasons for seeking the testimony of the executives at issue and offer categories of information and specific areas of questioning that they intend to address. In support, they also carry their burden of establishing that the information regarding the executives' knowledge about Union Pacific policy on crossing safety is relative to their allegations insofar as that information may be part of their claims of gross negligence against Union Pacific.

The burden then shifts to the Defendant to establish good cause and a specific need for a protective order. In analyzing Defendant's arguments, the Court recognizes that deposing the executives at issue would surely be inconvenient to both the Defendant and the individuals.

As for a specific need for quashing the depositions, Defendant argues that the Plaintiffs are required to seek less burdensome means of discovery before deposing executives. While the Court does not wholly agree with the Defendant's analysis in support of this statement[2], the undersigned

---

[2] Because the Defendant's motion to quash is premised on a separate legal standard than the federal discovery standards utilized by the undersigned *supra*, the Court finds it necessary to address the state apex doctrine relied upon by Defendant and why it is inapplicable in this case. The Defendant cites "the seminal case setting forth the apex doctrine relative to the discovery of higher level corporate officials" as *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex. 1995), a Texas Supreme Court opinion. Defendant then argues that the Plaintiffs cannot show that the requested deponents have unique or superior knowledge of discoverable information, and the Plaintiffs must

does agree that the Plaintiffs should first depose Union Pacific's corporate representative under Federal Rule of Civil Procedure 30(b)(6) before being able to acquire the testimony of the individual officers. In sum, it appears that the Plaintiffs are seeking a Union Pacific formal policy pertaining to the upgrades of railroad crossings as related to governmental involvement in the regulation of these crossings. Plaintiffs argue that they already attempted to obtain this information from lower-level officers in the *Cezar* case, but were unable to get straightforward answers. However, according to the briefs, the Plaintiffs have yet to notice a Rule 30(b)(6) deposition and have not shown that, in this case, that deposition would not supply the sought information.

This situation is similar to those at issue in *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) and *Baine v. General Motors*, 141 F.R.D. 332 (M.D. Ala. 1991). In *Salter*, the Fifth Circuit Court of Appeals upheld the district court's requirement that a plaintiff first depose other witnesses before being able to depose the defendant's company president. *Id.* at 651. In *Baine*, the court concluded that deposing a vice president of the defendant company would be "oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had

---

accordingly pursue less intrusive means of discovery before attempting to secure the deposition testimony of the higher-level executives. This is in fact the law governing such discovery in Texas. *See, e.g., In re BP Products North Am., Inc.*, 244 S.W.3d 840, 843 n.2 (Tex. 2008).

       However, the Court finds that the specific standards set forth by the Texas apex doctrine as cited by Defendant is inapplicable in this federal diversity proceeding because federal procedural rules, including the discovery rules set forth by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, govern the discovery procedures applicable to the management of this case. *See Rahimi v. United States*, 474 F. Supp. 2d 825, 827, 829 (N. D. Tex. 2006). Federal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings. *See Texas Indus., Inc., v. Factory Mutual Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007); *see also Sauceda v. Pfizer, Inc.*, No. C-07-06, 2007 U.S. Dist. LEXIS 1600, *5 (S.D. Tex. Jan. 9, 2007) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991); *see also Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

       Upon research, the Court found no federal cases within the Fifth Circuit actually applying the Texas standard for the apex doctrine as relied upon by Defendant. Accordingly, the Court concludes that the more rigid "apex doctrine" as enunciated by the Texas Supreme Court and relied upon by Defendant in its motion is inapplicable to this federal case. To the extent that the Court holds that the Plaintiffs should engage in other means of discovery before obtaining the requested depositions, the undersigned specifically reaches that conclusion based upon the facts of this case, the Federal Rules of Civil Procedure, and applicable federal caselaw, not the more specific Texas "apex doctrine."

from [other witness]" and the corporate deposition had not yet been taken, which could satisfy some of the plaintiffs' needs. *Baine*, 141 F.R.D. at 335. *See also Mulvey v Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (ordering that interrogatories should be propounded instead of deposing Lee Iacocca, Chrysler's chairman at the time, without prejudice to plaintiffs' ability to depose him later if still warranted).

In conclusion, the Court finds it proper to quash the depositions of the Union Pacific executives at this time. Plaintiffs should first attempt to obtain the sought information through the less burdensome means of discovery described herein, including the Rule 30(b)(6) corporate deposition. The Court further notes that, as in *Salter*, *Baine*, and *Mulvey*, it is not prohibiting the taking of those executives' depositions altogether. The issue may be revisited again, if warranted, and the Plaintiffs are able to show that they cannot obtain the necessary information through other means of discovery. *See, e.g., See Kimberly-Clark Corp. v. Continental Cas. Co.*, No. 3:05-CV-475, 2006 U.S. LEXIS 86469 at *5 (N.D. Tex. Nov. 29, 2006) (denying a motion to quash and for a protective order and allowing the deposition of defendant's board chairman and CEO *after* plaintiffs already conducted a Rule 30(b)(6) deposition and received interrogatory responses which did not provide complete information).

Accordingly, the Court ordered that the noticed depositions of John Michael Hemmer, James R. Young, Richard K. Davidson, and Dennis J. Duffy are quashed at this time, without prejudice to reassert at a later date.

**SIGNED this the 18th day of June, 2008.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE